## Meyers v. Monroe et al.

January 31, 1950.

Chester Adams, Judge.

Troy D. Savage and Raymond B. Murphy for appellant.

George R. Smith for appellees.

MORRIS, COMMISSIONER—Affirming.

Appellant owned and operated a restaurant, Kampus Kitchen, in Lexington. In his petition, which sought enforcement of a contract, he alleged that in September 1947, he entered into contract with Monroe and wife, whereby they were to buy the restaurant business and equipment for $16,000, of which $7,500 was to be cash (this appears to have been an assumption of a mortgage on the restaurant equipment) the balance to be paid according to a written contract. Monroe and wife were the owners of a home in another part of the city; they were to and did list this property with a real estate broker to be sold for $17,000, but if not sold within 90 days they were to convey the property, which was also under mortgage to the amount of about $12,000, to Meyers in satisfaction of the sum of about $4,900 of the balance of $8,500 on the sale price. Appellees were also to execute a promissory note for $3,562.87, the remaining balance. The contract was closed in October and appellees took possession of the restaurant and operated it for a brief period, but failed to execute a deed to

their property or the note for the final payment; the house was not sold in the 90 day period.

Alleging the foregoing facts Meyers sought to enforce the contract. Monroe and wife answered, first by a denial of certain allegations of the pleading, but raised the real issue by counterclaim. They allege that in the negotiations leading up to the sale the plaintiff made material false and fraudulent representations upon which they relied, and but for which they would not have contracted. These consisted, as alleged, of a statement that Kampus Kitchen was then earning $1,000 per month and would continue to do so if operated in the way plaintiff had operated the business. That when they took over the main patronage was by University students, but that shortly thereafter the University opened a large restaurant across the street which accommodated more than 500 patrons per day. They allege that plaintiff knew this restaurant was soon to be opened and knew that the business would not continue as he had represented. That upon the opening of the competing restaurant their patronage fell to 20 or 25 persons per day, or in value to about one-tenth of the volume represented by plaintiff.

They alleged that during negotiations they inquired of appellant about the building across the street, and he told them it was to be used as a dormitory or living quarters for students, knowing at the time that it was to be used as a restaurant. In this pleading appellees sought to have the court cancel the contract and relieve them from all liens and obligations arising under the agreement.

Following reply to the counterclaim there was entered an agreed order to the effect that Monroe and wife had conveyed their property to Meyers to be credited to the extent of $4,937.13 on the deferred payments on the restaurant, and for the balance had given him their promissory note for $3,562.87. Appellees then amended their counterclaim transforming it into an action for damages on account of the alleged fraudulent statements asking $3,500, the difference in the represented and real value at the time of purchase. A motion to require defendants to elect which defense they would stand on was sustained, and they elected to rely on the tort action and the order showing this fact "adjudged * * * that

the defendants should have the right to amend their pleading to conform to the proof." In the agreed order showing the execution of the deed to plaintiff it was specifically agreed that its delivery and acceptance should not prejudice his right to recover on his claim for the amount of the note executed to him, or affect or prejudice the right of defendants to defend upon their amended counterclaim.

The issue was submitted and the jury returned a verdict in favor of Meyers for $3,562.87 and offset that, finding for defendants on their counterclaim. The court entered judgment in conformity and plaintiff appeals. There is no cross appeal.

It is contended here that the court was in error in overruling appellant's motion for a directed verdict at the close of defendant's evidence, on the theory that defendants admitted the execution of the note, and that there was not sufficient proof of actionable fraud on the part of plaintiff. It may be that appellant was entitled to a directed verdict for the amount of the note. Whether the court so advised the jury we are unable to say, since there are no instructions in the record. We find this in the bill of exceptions: "There being no objections made to the instructions there is no need of including the instructions given in this bill of exceptions." In this state of the record we must assume that the court correctly instructed the jury on all issues made by pleadings and supported by proof.

Before we take up the question of actionable fraud, we shall consider the question as to whether the court admitted incompetent and prejudicial evidence on the part of defendants. Monroe was asked if the lease on the restaurant building had been assigned to him, and objection to the question was overruled. Monroe then said (without objection) that Meyers had agreed that the lease should be assigned to appellees. Appellant contends that this evidence was incompetent, because it was an oral agreement which in effect would vary the terms of a written contract, and that it was not properly plead as an act of fraud. The only contract we find in the record is a bill of sale of the restaurant and equipment at a stated price without terms or conditions, except that $7,000 was to be paid in cash, and the balance to be paid "to the seller by the buyer."

After verdict appellees amended their counterclaim by alleging that ''there were other acts of fraud practiced by plaintiff upon which they relied and by which they were induced to purchase.'' Plaintiff moved to strike this amendment. The court did not rule on the motion, and later defendants amended again and stated that during negotiations appellant fraudulently and knowingly represented that if they would purchase, he would transfer the lease to them, when he knew that he could not do so. There was no motion to strike or reply to the pleading.

It is noted that in the order reciting the election of defendants it was specifically agreed that defendants should have the ''right to amend their pleadings to conform to proof,'' without reference to time. In view of this, and that technically plaintiff waived any objection to the last amendment by failure to move to strike or otherwise object, there was no error in this respect. Whitney Transfer Co. v. McFarland, 283 Ky. 200, 138 S. W. 2d 972. It does not appear to us to be objectionable on the ground that it varied the terms of the ''bill of sale,'' which, as we read it, made no mention of lease. On the whole, admitting for argument's sake that there was some irregularity, we can hardly see that the evidence had any prejudicial effect. Aside from this, in the absence of instructions, we cannot say whether or not this particular alleged item was set up or referred to in the admittedly correct instructions.

Appellant in brief correctly states that aside from the alleged act of fraud in respect of the lease, there were three acts alleged: (1) Statement by plaintiff that his profit was $1,000 per month from his operation of the restaurant; (2) that if defendants operated the restaurant as he had they would make a like amount; (3) that a building being erected across the street on University grounds was to be used as a dormitory for housing students.

Again to bypass argument on the question, it may be admitted that the statement as to future earnings, being an expression of opinion or what is called ''sales talk'' did not of itself constitute actionable fraud, hence no need for citation of authorities. Appellant contends that the proof did not sustain the allegations, and that as to the building, if the statement was made, defend-

ants cannot complain because they made no attempt to inquire as to the verity or falsity of the statement.

Monroe and his wife testified that during the negotiations which were carried on for several days appellant said he was making $1,000 per month. He said that he had closed up for a short while, but since he had hired two women to run the place he had made $1,000 per month. They said they saw the building going up across the street and asked what it was to be used for and he replied that it was to be used as a dormitory or living quarters for University students.

He was asked if he had made the statement about the University building and he first said he did not. Asked if he had any connection with the building he replied, "I would not say offhand because I don't recall anything about that." He also said he did not know the purpose of the building as he paid no attention to it. "I don't remember telling them anything about it." In rebuttal he said that the matter of the building was never mentioned. There is no question that if the statements were falsely made, there existed a palpable fraud, and the question as to whether or not they were made was one solely for the jury under proper instructions. On these points there was sufficient evidence, though a sharp conflict.

One who makes a material false representation upon which the other relies is liable whether he knew of its falsity when he had opportunity to know of its falsity, Hindman v. 1st Nat. Bank, 6 Cir., 112 F. 931, and the defrauding party cannot escape on the ground that the complaining party should not have trusted him, or was negligent in so doing. Great A. & P. Co. v. City of Lexington, 256 Ky. 595, 76 S. W. 2d 894; Bankers Bond Co. v. Cox, 263 Ky. 481, 92 S. W. 2d 790; Cowles' Ex'r v. Johnson, 297 Ky. 454, 179 S. W. 2d 674 It is argued that there was no proof that appellant was not making a profit of $1,000 per month from his business. The proof is not positive, but it is shown that after taking over the operation (and Monroe had theretofore engaged in the restaurant business) the *business* was good. However, it is shown that about three weeks after the University restaurant began operation the Kampus Kitchen *business* fell off to about $37.50 per day, without showing the net profit.

While it is noted that Mr. Meyers did not say in his testimony that he was making $1,000 per month, he did say that the business was such for two months that he closed up shop. When he was called for rebuttal he was asked about the thousand dollars per month profit and he said: "I said he could probably make that much if he operated it himself, except possibly in the summer when the University people go home. I was able to keep my head above water, even with hired help and by operating it through a manager, and could have gone on doing that; what I am interested in is getting my money back I lost in the deal. I was doing just enough business to break even."

As to the proof of damages, or loss by reason of the purchase, while not too clear we think it was sufficient to justify the jury in finding that the loss amounted to the amount fixed in the verdict and judgment. Appellee had traded in his house of the value of $17,000 for a $16,000 business and equipment. He had lost his time without appreciable profit. He was asked as to the difference in the sales contract value and the market or sales value, and fixed this at $6,000. Without objection he said that he had made many efforts to sell and had placed it in the hands of real estate brokers, and the best offer obtained was $10,000.

On the whole case we are of the opinion that the court was justified in concluding that the pleadings and proof, to the extent indicated, were sufficient to justify a submission to the jury, and the jury under the conflicting evidence determined that the statements attributed to appellant were made and relied upon by defendants, and that the jury reached and returned a fair and equitable verdict.

Judgment affirmed.